2480

The STATE, Respondent v. James M. EZELL, Appellant.

(468 S.E. (2d) 679)

Court of Appeals

*John M. Loy,* Summerville, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,* and *Assistant Attorney General G. Robert DeLoach, III,* Columbia; and *Solicitor Walter M. Bailey, Jr.,* Summerville, *for respondent.*

Submitted Jan 9, 1996.

Decided Mar. 18, 1996.

*Per Curiam:*

Appellant, James Ezell, was convicted of trafficking in crack cocaine and possession with intent to distribute crack cocaine within a half mile of a school. He appeals the denial of his directed verdict motion and the trial judge's refusal to charge a requested instruction. We affirm.

On March 3, 1994, at approximately 10:00 a.m., the Sum-

merville Police Department received information that an individual with an outstanding warrant had been seen in the area of the appellant's home. At approximately 10:15 that morning, officers went to the location to serve the warrant and, as they approach the residence, observed several males in the appellant's yard. As the officers pulled up to the residence, the individuals fled. Officer Harry Long and Officer Derrin Mills observed appellant fleeing the area and gave chase. Ezell was running with his hands tucked in his jacket, holding something as if to conceal it. Officer Long drew his weapon and appellant momentarily stopped, but then continued to run.

Ezell ran between two houses and continued around a fence line, turning a corner. Officer Long was approximately ten to fifteen feet behind Ezell when Ezell turned the corner, and he was able to keep a visual on Ezell, even though his view was somewhat obstructed by shrubbery. Ezell then stopped running, and as Long and Mills rounded the corner, Ezell turned, bringing his hands up. As Officer Long performed a pat-down search, Officer Mills began looking in the vicinity that Ezell came to a stop. Officer Mills found a brown medicine bottle on the ground on the far side of a wire fence about five feet from Ezell. The bottle contained crack cocaine.

Officer Mills stated, although the weather was cold and the ground was still wet from rain, the bottle was warm and dry. He further stated there were no other people visible in the area, no other suspects had run in that direction from Ezell's home, and no other bottles or litter of any type were found in the area.

At the close of the State's case, appellant moved for a directed verdict on the drug charges. The trial judge ruled a jury question existed as to whether Ezell possessed the drug and therefore denied the motion. Following the judge's charge to the jury, appellant requested an additional charge on trafficking which tracked language from Judge Ervin's criminal request to charge book. The trial judge found his charge adequately covered the law and denied the request.

### DIRECTED VERDICT

When a motion for directed verdict is made in a criminal case, the trial judge is concerned with the existence or nonexistence of evidence, not its weight. *State v.*

*Morgan*, 282 S.C. 409, 319 S.E. (2d) 335 (1984). The motion should be granted if the evidence merely raises a suspicion of the defendant's guilt. *State v. Brownlee*, 318 S.C. 34, 455 S.E. (2d) 704 (Ct. App. 1995). However, if the State presents any evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced, the case must go to the jury. *Id.* On appeal from the denial of a motion for directed verdict, this court must view the evidence in a light most favorable to the State. *State v. Schrock*, 283 S.C. 129, 322 S.E. (2d) 450 (1984). Viewing the evidence in a light most favorable to the State, we find sufficient evidence for a jury to fairly and logically deduce Ezell's guilt.

Ezell argues this case is controlled by *State v. Ballenger*, 317 S.C. 364, 454 S.E. (2d) 355 (Ct. App. 1995).

In *Ballenger*, officers pursued an individual who appeared to be involved in a drug transaction. After the suspect was apprehended, officers searched the area of a fence the suspect had jumped and found crack cocaine wrapped in a newspaper. This court reversed Ballenger's conviction finding the trial court should have granted his motion for directed verdict of acquittal.

We find *Ballenger* to be distinguishable from the case at hand. In finding the State failed to prove constructive possession in *Ballenger*, the court specifically noted that testimony at trial established drugs were "often found in the subject area hidden or just 'laying around' under rocks, bushes, bricks, or along fences in the area" so that anyone could have placed the newspaper-wrapped drugs there. Here, on the other hand, there is no evidence the area where the drugs were found was frequented by others who stashed their drugs there. There was, however, evidence indicating that no one else was in the area and no other bottles or litter were found in the area. Further, the evidence showed the bottle containing the crack was warm and dry even thought the weather was cold and damp. Finally, we note that evidence of flight has been held to constitute evidence of guilty knowledge and intent. *State v. Brownlee, supra.* Accordingly, under the facts of this case, we hold the evidence viewed in a light most favorable to the State required the trial judge to deny Ezell's directed verdict motion and submit the issue of guilt to the jury.

## JURY CHARGE

Appellant next contends the trial judge erred in failing to instruct a requested jury charge on trafficking. We disagree.

The trial judge charged S.C. Code Ann. § 44-53-375(C) ■ (Supp. 1994)[1] of the trafficking statute and further charged the State must prove the amount involved was between ten and twenty-eight grams and that the defendant knowingly possessed the substance. Counsel then requested the trial judge charge the jury on the trafficking language used in Judge Ervin's book. Specifically, he requested the following charge:

> Trafficking is defined, in addition to the statutory mandate finding of a certain quantity, by way of general information, as "engaging in commercial activity to buy and sell regularly." Trafficking imputes the carrying on or the engaging in a business. The word "traffic" has a popular meaning of an exchange or passing or goods or commodities for other goods or money.

Tom J. Ervin, *Ervin's South Carolina Requests to Charge— Criminal* § 19-15 (1994).

A charge is sufficient if, when considered as a whole, it ■ covers the law applicable to the case. *State v. Burton*, 302 S.C. 494, 397 S.E. (2d) 90 (1990). Although charges requested by a party may be a correct statement of law, a judge does not err by refusing to deliver the charges verbatim. *State v. Hicks*, 305 S.C. 277, 407 S.E. (2d) 907 (Ct. App. 1991). The judge properly instructs the jury if he adequately states the applicable law. *Id.* A jury charge which is substantially correct and covers the law does not require reversal. *State v. Hoffman*, 312 S.C. 386, 440 S.E. (2d) 869 (1994). We find the charge, considered as a whole, is correct and adequately covers the law.

---

[1] § 44-53-375(C) provides in pertinent part:

A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bing into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of ice, crank, or crack cocaine . . . is guilty of a felony which is know as "trafficking in ice, crank or crack cocaine". . . .

Further to read the isolated excerpt from Judge Ervin's trafficking charge would place undue emphasis on that portion of the statute which defines the selling and purchasing of the drugs as trafficking. The jury could have been misled to believe the State was required to prove Ezell was actively engaged in "commercial activity to buy and sell regularly." In fact, trafficking in crack cocaine may be accomplished by a variety of criminal acts, including the knowing possession of a certain quantity of the drug, under § 44-53-375(C).[2]

For the foregoing reasons, the conviction is

Affirmed.

SHAW, GOOLSBY and HEARN, JJ., concur.

---

[2] A review of § 19-15 of *Ervin's South Carolina Requests to Charge—Criminal* reveals the language in question is proposed for use in conjunction with trafficking in *cocaine* in violation of S.C. Code Ann. § 44-53-370 (Supp. 1994). This section requires proof of possession with intent to manufacture, distribute, dispense, deliver, or purchase the controlled substance. On the other hand, § 44-53-375(C) requires only proof of knowing possession of ten or more grams of *ice, crank,* or *crack cocaine.*